UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

CRAIG BROWN a/k/a/ DEMETRIOUS
BROWN,
                    Petitioner,

        - against -

ELLIOT SPITZER,

                    Respondent.
------------------------------------------------------------ X

NOT FOR PUBLICATION

MEMORAND DECISION
AND ORDER

05 Civ. 1553 (BMC)

**COGAN**, District Judge.

This is an action seeking a writ of habeas corpus under 28 U.S.C. §2254. The petition raises three points of error under the Due Process Clause: (1) failure to give a missing witness charge; (2) improper reference by a testifying police officer to a "wanted" poster; and (3) insufficiency of the evidence. Petitioner had also raised an ineffective assistance of counsel claim, but has agreed to withdraw that claim because he failed to exhaust it and it is now procedurally barred.

## BACKGROUND

Petitioner was convicted of one count each of robbery in the first, second and third degree; first degree burglary; second degree assault; and endangering the welfare of a child. As a second violent offender, the court sentenced him to a total of nineteen years. The charges arose out a violent crime spree comprised of three different incidents occurring on August 27, 1999, January 19, 2000, and May 3, 2000.

In the first incident, petitioner gained access as a guest to the apartment of William Boston. Boston let him in because although he did not recognize petitioner when

he showed up at the door, Boston had another guest, Charles Harrell, who was staying in Boston's apartment. Harrell told Boston that the person at the door might be petitioner, at which point Boston recalled having met petitioner a month earlier, and let him in. Petitioner talked to Boston for awhile and then volunteered to go buy beer for them, which he did and returned with beer. The two talked some more, and petitioner asked Boston if he could stay over, to which Boston agreed.

Harrell left the apartment the next morning. When petitioner and Boston awoke, they drank some more beer and talked some more. About 9:45 that morning, petitioner attacked Boston, beating him severely, choking him, and threatening him with a kitchen knife. Boston became dazed from the beating. Petitioner stole a small amount of money and two radios. He disabled the telephone, and left.

Boston described petitioner to the police but could not remember his name. About two weeks later, Boston went to the police station with Harrell and told the police petitioner's name, which he had learned from Harrell. Subsequently, Boston spoke to the police again, and a Detective Williams prepared a "wanted poster" for petitioner. The police never interviewed Harrell. Petitioner remained at large until he was arrested as described below.

In the second incident, about five months later, petitioner broke into the home of one Johnny Simmons and his girlfriend. Simmons had a nodding acquaintance with petitioner and knew him by the nickname, "Fronts." He saw petitioner through the peephole at his door when petitioner appeared uninvited, but didn't want to let him in. Simmons sent his girlfriend's 11-year old son, Justin, to tell petitioner at the door that Simmons wasn't home. Justin opened the door to so advise petitioner and petitioner

entered with a gun drawn. He menaced Simmons, Justin, and Simmons' girlfriend's other son, who was two years old. He demanded and took all of Simmons' money, jewelry, and a leather jacket. Petitioner again disabled the telephone and left.

Simmons' girlfriend returned home about 20 minutes later. Because the telephone was not working, they went downstairs and flagged down a police officer. Simmons described what had happened, gave a description of petitioner, and told the officer that petitioner went by the name "Fronts." Simmons and Justin later that day gave a fuller description to Detective Williams.

In the third incident, about five months later, petitioner and two associates entered into a livery car over the driver's objection. The driver agreed to take them to a busy intersection to catch another car since they were already in his. When they arrived at that intersection, petitioner and his associates refused to get out of the car. Petitioner struck the driver, who saw one of petitioner's associates at that moment putting on blue gloves. The driver fled the car into a nearby McDonalds, from which he could see the car. Someone in the McDonalds called the police. Auxiliary police officers arrived on the scene and apprehended petitioner but his associates escaped. The driver advised police, upon looking in his car after the arrest, that money from the car had been stolen.

Petitioner identified himself as Demetrius Brown but the police confirmed that he was Craig Brown. Detective Williams learned of the arrest and conducted separate lineups at which Boston, Simmons, and Justin all positively identified petitioner.

## DISCUSSION

Each of the three points that petitioner is pursuing essentially address alleged errors of state evidentiary or procedural law that petitioner is attempting to elevate to the level of federal constitutional claims. He is resting on his State Court brief. His federal claims here are exhausted, but barely – the U.S. Constitution is cited in the point headings of his State Court brief (I assume this was done expressly for the purpose of exhaustion) but the argument is entirely based on New York State evidentiary or procedural decisions, with only two passing references to federal decisions, neither one of them a Supreme Court decision. Thus, in determining whether the Appellate Division decision on the merits of these points was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, see 28 U.S.C. §2254(d), this Court will arrive at its own conclusion as to the closest applicable Supreme Court authority and determine whether the Appellate Division decision falls within the statutory requirements.

## I. Missing Witness Charge

Petitioner contends that the trial court improperly denied his request for a missing witness charge as to Harrell, who stayed in Boston's apartment with petitioner and Boston until the morning of the attack. The Appellate Division rejected this claim on the merits, holding that, "[t]he Supreme Court properly denied the defendant's request for a missing witness charge since he failed to demonstrate that the uncalled witness was knowledgeable about a material issue and would have provided testimony favorable to

4

the prosecution." People v. Brown, 309 A.D.2d 871, 766 N.Y.S.2d 51 (2d Dep't. 2003), leave to app. den., 1 N.Y.3d 625, 777 N.Y.S.2d 24 (2004).

A state trial court's jury instructions are ordinarily not a matter that raises a federal question, but rather, the propriety of such instructions is a matter of state law. See Cupp v. Naughton, 414 U.S. 141, 146, 94 S.Ct. 396, 400 (1973). Only if a defective jury charge "so infected the entire trial that the resulting conviction violated due process" can a federal court grant habeas relief. Id. at 147, 94 S.Ct. at 400. Thus, the failure to give a missing witness charge "will rarely support reversal or habeas relief since reviewing courts recognize the 'aura of gamesmanship that frequently accompanies requests for a missing witness charge as to which the trial judge will have a surer sense' than any reviewing court." Malik v. Kelly, No. 97 cv 4543, 1999 WL 390604, *7 (E.D.N.Y. April 6, 1999) (quoting U.S. v. Torres, 845 F.2d 1165, 1170-71 (2d Cir. 1988) (internal quotation marks omitted). The decision of whether to give a missing witness charge is committed to the sound discretion of the trial court. Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir. 1992).

In the instant case, petitioner has failed to demonstrate that a missing witness charge was required under state law let alone required by the Due Process Clause. Harrell did not witness the attack but had left the apartment two hours earlier, so there is no indication that he had any material information to add. There was similarly no showing that he had a sufficiently close relationship with Boston to warrant an inference that the prosecution decided not to call him because he would have given evidence favorable to petitioner. Given that Boston had spent hours, indeed the entire night and next morning, looking directly at petitioner, I cannot see any material identification

5

information that Harrell would have and that is constitutionally required. Moreover, petitioner's trial counsel was granted the right to argue in closing that the jury should draw an adverse inference from the failure to call Harrell, for whatever that was worth, and the cases have recognized that counsel's closing argument as to an allegedly missing witness cures the failure to charge, if one would be required. See e.g., Fair v. Greiber, No. 01 Civ 6921, 2007 WL 1094160, *14 (E.D.N.Y. April 10, 2007); Rivera v. Duncan, 00 Civ. 4923, 2001 WL 1580240 (S.D.N.Y. Dec. 11, 2001). Accordingly, I cannot find that the Appellate Division decision rejecting this claim was contrary to or an unreasonable application of Supreme Court authority.

## II. Improper Reference to "Wanted Poster"

Petitioner asserts that he was denied due process when Detective Williams testified that he had prepared a "wanted poster." The Appellate Division rejected this argument as among those that "either are unpreserved for appellate review or without merit." This constitutes an adjudication of the merits and triggers deferential review under 28 U.S.C. §2254(d). See Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006).

Petitioner's reasoning is fairly tortured, based on speculative inferences that he assumes the jury must have drawn when it heard the brief reference to a "wanted poster." First, he contends that the jury would assume (albeit incorrectly) that all "wanted posters" have a picture on them, instead of just pedigree information. From this, he argues that the jury would conclude that petitioner has a prior arrest, because how else would the police have obtained his picture except from a mug shot? (This next step requires the assumption that the jury might not know or think that the police could obtain his picture from a driver's license, passport, or other publicly recorded image.) He therefore argues

that the jury would have concluded that he had a prior arrest, a matter not in evidence, and that would violate his right to due process. And, just in case the jury might think that the police prepared a sketch for the poster based on Boston's or Simmon's description, petitioner argues that this would still violate his due process rights, on the ground that it would be improper bolstering of Boston's lineup identification.

Petitioner's argument does have some roots in state law, which prohibits the admission of a composite sketch and the circumstances surrounding its preparation in most instances, see People v. Maldonado, 97 N.Y.2d 522, 528, 743 N.Y.S.2d 389, 393-94 (2002). However, the argument cannot withstand a federal constitutional reality check; broad as it is, the Due Process Clause does not encompass this attenuated a chain of reasoning.

There was no testimony about a composite sketch. The wanted poster was not introduced into evidence. Det. Williams said nothing about any picture or sketch; when asked what a wanted poster is, he testified, "Wanted Poster, we have an ID on a subject. We make a Wanted Poster so other cops on patrolling, uniform or investigation units know he's wanted; if they see him out there, they'll grab him." Considering that petitioner spent hours with Boston before he attacked him, and that Boston, Simmons, and the livery car driver all picked petitioner out of a lineup, this argument simply does not present a due process issue. I can find no Supreme Court authority that is contrary to the Appellate Division's decision nor that it unreasonably applied.

### III. Insufficiency of Evidence/Against the Weight of the Evidence as to the Livery Car Attack

The Appellate Division held that this specific claim was "unpreserved for appellate review," citing N.Y. Crim. Pro. L. § 470.05[2], and that "[i]n any event, viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence." People v. Brown, supra (citations omitted).

Petitioner's claim that the evidence is insufficient is procedurally barred. New York Criminal Procedure Law §470.05[2], the "contemporaneous objection" rule, is an adequate and independent state ground barring habeas review unless petitioner can show good cause for not having raised it at trial together with prejudice and a miscarriage of justice. Petitioner makes no such argument here and I cannot see it. See Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2564 (1991). As to petitioner's claim that the verdict was against the weight of the evidence, that does not present an issue of federal constitutional law; it is a discretionary ground of review left to the State Courts. Klosin v. Conway, No. 02-CV-0473, 2007 WL 2255119, *8 (W.D.N.Y. August 7, 2007).

If I were to review the claim on the merits, as did the Appellate Division, I would again accord the Appellate Division the discretion required under 28 U.S.C. §2254(d). See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). The Appellate Division decision does not violate the test in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979), which prohibits habeas relief if, "after viewing the evidence in the light most

8

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original).

Petitioner contends that there was no evidence that when he attacked the livery car driver, he used force or the threat of force to obtain the money, a required element of the crime. The argument is wholly without merit. Petitioner refused to get out of the car, struck the driver, who fled from the car, and then petitioner or his associates took the money. Petitioner's absurd argument is that being struck in the head was not enough; since the driver did not testify that anyone "threatened" him, demanded money, or told him to get out of the car, and that perhaps petitioner's accomplice put on the blue gloves because his hands were cold, there was no proof of force or threat of force to sustain the charge. Petitioner argues that the driver got slapped because he refused to drive petitioner and his associates further, not because they wanted to rob him. I think the jury was entitled to draw the logical, indeed, inescapable conclusion from the facts that were presented to it.

## CONCLUSION

The petition is denied. The Clerk is directed to enter judgment in favor of respondent. Petitioner has failed to make a substantial showing of the denial of a

constitutional right. Therefore, a certificate of appealability shall not issue. 28 U.S.C. §2253(b)(2).

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/
U.S.D.J.

Dated: Brooklyn, New York
August 20, 2007